ASSOCIATION OF FAITH–BASED ORGANIZATIONS, Plaintiff,

v.

Stephen E. BABLITCH, Rachel Meek, Godwin Amegashie, Stephen Beardsley Paul Breen, Debbie Bothell, Joel Chapiewsky, Michael Daly, David Jaloszynski, Gale Johnson, Marcus Mile, Peter Olson and Deborah Garrett Thomas, Defendants.

No. 06–C–175–S.

United States District Court, W.D. Wisconsin.

Sept. 27, 2006.

Thomas J. Balistreri, Assistant Attorney General, Madison, WI, for Defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff Association of Faith–Based Organizations commenced this action on behalf of several of its members for injunctive and declaratory relief entitling its members to be listed as potential donees in the Wisconsin State Employees Combined Campaign ("SECC"), a program through which Wisconsin State Employees may make voluntary contributions to listed charitable organizations via payroll deduction. Jurisdiction is based on 28 U.S.C. § 1331. The matter is presently before the Court on cross motions for summary judgment. The parties have submitted an agreed statement of all facts which they

believe are necessary to determine the legal issues presented and have jointly represented that no factual issues remain to be resolved at trial. The following is a summary of the stipulated facts.

## FACTS

SECC is authorized and overseen by the Wisconsin Department of Administration. Although the state provides no cash to the program, SECC uses state facilities, equipment and supplies, and employee volunteers work on the program during regular hours of employment. Defendant Bablitch is responsible for establishing and maintaining the list of charitable organizations eligible to receive contributions. Defendant Bablitch delegates to an Eligibility Committee the task of reviewing applications and recommending which charities should be included in the campaign. In 2005 SECC included more than four hundred organizations and collected more than $2.8 million in contributions.

Wisconsin Administrative Code Chapter ADM 30 governs the process and requirements for participation in the program. ADM 30.05(11) provides:

The charitable organization shall have a policy and procedure of nondiscrimination in regard to race, color, religion, national origin, handicap, age, or sex applicable to persons served by the charitable organization, applicable charitable organization staff employment, and applicable to membership on the charitable organizations governing board.

Defendants interpret and apply this provision to render a religious charitable organization ineligible for participation if its governing board or staff are required to agree with the religious beliefs of the organization. To be initially eligible to participate in the program a charitable organization must submit a written assurance that it complies with the requirements of ADM

30.05(11). This statement is examined by the Eligibility Committee for compliance.

Several of plaintiff's members, Christian Legal Society, Pro-Life Wisconsin Educational Task Force, Teen Challenge International—Wisconsin, Advocates International, and Mission Aviation Fellowship, (collectively "members") comply with all requirements for participation in SECC except that each requires its governing board and employees to affirm their Christian Faith. In 2005 Christian Legal Society applied for and was denied participation in the SECC based solely on its requirement that board members and employees affirm their Christian faith. In 2003 defendants denied member Mission Aviation Fellowships application to participate, however in 2005 its application was granted and its participation was renewed in 2006.

Defendants have permitted several other charitable organizations including Mercy Ships, Christian Military Fellowship World Impact and India Partners, to participate notwithstanding that these organizations have similar requirements of faith affirmation for its board members. The following additional organizations have been allowed to participate in SECC notwithstanding website statements which set forth policies inconsistent with ADM 30.05(11): Adventist Development and Relief Agency International, Food for the Hungry, MAZON, World Concern, Officers Christian Fellowship, Hispanic Scholarship Fund, American Indian College Fund, Elder Care Partnership Program and Movin' Out.

In 2002, in the context of a proposal to add sexual orientation to the list of prohibited bases of discrimination, then-secretary of the Department of Administration George Lightbourn acknowledged in a letter that the following participating organizations likely limit clients and board members in ways that might disqualify them under ADM 30.05(11):

Aids Network, Aids Resource Center, Catholic Charities Diocese of Madison, Boy Scouts, Urban league of Greater Madison, Women's Transit Authority, Catholics United for Life, National Black Child Development Institute, Native American Rights Fund, Zero Population Growth, Christian Children's Fund, Salvation Army World Service Office, National Association of Black Veterans, Inc., WI association of Black Public Sector Employees, National Right to Life Education Trust Fund, Officers Christian Fellowship, Prison Fellowship Ministries; American Friends Service Committee, Bethany Christian Services Parents, Families and Friends of Lesbians and Gays, People for the Ethical Treatment of Animals, Planned Parenthood Foundation, Jewish Social Services of Madison.

## MEMORANDUM

Plaintiff contends that the application of ADM 30.05(11) to exclude religious charitable organizations from SECC impermissibly infringes its members First Amendment rights of expressive association, free speech and free exercise, and the Establishment Clause, as well as their rights under the Equal Protection Clause. Defendants maintain that ADM 30.05(11) as applied to religious charities is a reasonable, viewpoint neutral limitation on access to a non-public forum and therefore not an actionable constitutional deprivation. Although defendants have identified the proper standard for assessing the constitutionality of their actions in denying plaintiff's members access to the SECC, they have failed to provide sufficient evidence from which a reasonable factfinder could conclude that they had a reasonable basis to exclude religious charitable organizations from the SECC.

Summary judgment is appropriate when, after both parties have the opportunity to submit evidence in support of their respective positions and the Court has reviewed such evidence in the light most favorable to the nonmovant, there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. A fact is material only if it might affect the outcome of the suit under the governing law. Disputes over unnecessary or irrelevant facts will not preclude summary judgment. A factual issue is genuine only if the evidence is such that a reasonable factfinder, applying the appropriate evidentiary standard of proof, could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ Plaintiff's members have a constitutional right to expressive association which entitles them to limit membership in their organizations to those who share common religious views. *Christian Legal Society v. Walker*, 453 F.3d 853, 861–62 (7th Cir.2006). Plaintiff's members also have a constitutional free speech right to solicit funds from state employees. *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 798–99, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). Denying access to the SECC impinges on both of those constitutional rights. The principal issue presented by the pending motions is whether the impingement of those constitutional freedoms resulting from their exclusion from the SECC is permissible under the circumstances.

■ Considering first the free speech claim, *Cornelius* makes clear that the SECC is a nonpublic forum, 473 U.S. 788, 805, 105 S.Ct. 3439, 87 L.Ed.2d 567 (Combined Federal Campaign program to solicit charitable contributions from federal employees is a nonpublic forum). Accordingly, defendants may properly exclude religious charitable organizations from the SECC only if the restriction is (1) reasonable in light of the purpose served by the SECC and (2) viewpoint neutral. *Id.* at 806, 105 S.Ct. 3439.

The standard for assessing defendants' conduct affecting expressive association rights is less clear. Plaintiff contends that the restrictions should be viewed as forcing inclusion of board members who do not hold similar beliefs to those of the organization, and that such a requirement can only be upheld if the exclusion serves "compelling state interests unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Christian Legal Society*, 453 F.3d 853, 861–62 (quoting *Boy Scouts of America v. Dale*, 530 U.S. 640, 648, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000)). Examination of the circumstances, however, compels the conclusion that this is not a "forced inclusion" case which would trigger the related heightened "compelling state interest" standard.

In *Dale* the Court struck down a New Jersey law prohibiting discrimination in public accommodations which would have compelled the Boy Scouts of America to admit homosexual members, a requirement contrary to its beliefs. Thus, the law at issue in *Dale* affirmatively intruded into the plaintiff's right to control membership. The same high standard has been applied to state action which stops short of direct forced inclusion but which imposes disabilities on the organization the practical reality of which is to compel forfeiture of constitutional rights. *Healy v. James*, 408 U.S. 169, 183, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972)(addressing the denial of recognized status for a university student group). The Seventh Circuit affirmed this principal in *Christian Legal*

*Society,* holding that denying a student group university recognition and its many attendant benefits triggered the same analysis. However, neither *Healy* nor *Christian Legal Society* stand for the proposition that any withholding of benefits, no matter how slight relative to the functioning of the organization, amounts to the state compelling an organization to admit unwanted members. *See Christian Legal Society* 453 F.3d at 864 .and 873–74 (discussing the extent of the impact of the withheld benefits on the organization and Wood, dissenting, contrasting the impact in *Healy* with that in *Christian Legal Society* ).

Whatever the threshold at which the denial of benefits becomes an indirect compulsion to admit unwanted members, it is apparent that denying plaintiff's members access to SECC does not cross it. The sole benefit denied to plaintiff's members is the right to join more than 400 other charities in soliciting funds from state employees through the SECC. Nothing suggests that the absence of that benefit in anyway threatens the members from pursuing their organizational objectives. Nothing suggests that any member would be compelled to abandon its rights to expressive association in exchange for this limited benefit. Unlike the student organizations in *Healy* and *Christian Legal Society*, whose continued existence as organizations might arguably depend on official university recognition, plaintiff's members do not suggest that they will cease to effectively function or fund raise unless they can access the SECC.

The correct standard for assessing the constitutionality of the members' exclusion from the SECC is that identified under nearly identical circumstances in *Boy Scouts of America v. Wyman,* 335 F.3d 80, 91 (2d Cir.2003). In *Wyman,* Connecticut excluded the Boy Scouts from its state employee charitable campaign. *Wyman*

rejected the application of the *Dale* standard: "The effect of Connecticut's removal of the BSA from the Campaign is neither direct nor immediate, since its conditioned exclusion does not rise to the level of compulsion." 335 F.3d at 91. Accordingly, *Wyman* concluded that the correct standard, whether the case was viewed as conditioning a government benefit on the relinquishment of a constitutional right, *citing Regan v. Taxation With Representation of Washington,* 461 U.S. 540, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983), or denial of access to a nonpublic forum, *citing Cornelius,* 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567, is whether the action was reasonable in light of the purpose of the forum and the surrounding circumstances, and viewpoint neutral.

■ Notwithstanding that the more lenient standard applies in assessing the constitutionality of defendants conduct, they have failed to satisfy the first component of the test, that their actions in excluding plaintiff's members be reasonable in light of the purposes of the SECC. Defendants offer two arguments in support of their position that excluding religious charitable organizations from the SECC is reasonable. First, they argue that exclusion of religious charitable organizations furthers a general state policy against religious discrimination. Second, they argue that it is reasonable to exclude religious charities from the SECC because their presence might cause controversy which would depress overall participation in the program. Viewed in light of the undisputed facts, the purpose of the forum and surrounding circumstances, neither position could sustain a finding of reasonableness.

Defendants' assertion that Wisconsin has a general policy of opposing invidious religious discrimination is undoubtedly true. However, it is equally clear that

Wisconsin does not espouse a policy against discrimination by religious groups in choosing members of their faith as directors and employees, and has affirmatively supported such rights. Such discrimination is, of course, fundamental to the nature of religious organizations and their right of expressive association. The Wisconsin Fair Employment Act expressly permits a non-profit religious organization to discriminate in its hiring in favor of employees of the same denomination and beliefs. Wis. Stat. § 111.337(2)(a) & (am). Furthermore, Wisconsin law forbids a county, city or town from adopting a discrimination statute which precludes such hiring practices. Wis. Stat. § 111.337(3). The articles of incorporation of a religious organization may specify that officers and trustees must be communicants of the faith of its affiliated church. Wis. Stat. § 180.030. Wisconsin Statutes not only allow the Department of Health and Family Services to contract with and provide grants to religious organizations for the provision of social services, Wis. Stat. § 46.027(1), it forbids discrimination against them, Wis. Stat. § 46.027(2), and forbids the department from requiring a religious organization to alter its internal governance to be eligible for a contract or grant. Wis. Stat. § 46.027(3)(b).

Wisconsin's public policy as embodied in its statutes unequivocally supports the right of religious organizations to control their internal governance and hire employees who share the organization's religious beliefs. Excluding religious charities from the SECC appears as a single stark exception to a consistent state policy. It is particularly anomalous to forbid discrimination against religious charities in the awarding of state grants and contracts which use state resources to confer a substantial monetary benefit upon religious organizations, yet to exclude such organizations from the far less significant, and less state connected benefit of access to

the SECC. The claim that excluding religious charities from the SECC is dictated by a larger state policy disfavoring discrimination in the governing boards and staff of religious organizations is simply unsupported.

This stands in sharp contrast to the situation in *Wyman*, where Connecticut state law expressly prohibited state agencies from providing support to organizations which discriminate on the basis of sexual orientation. 335 F.3d at 97. In that situation, admitting such an entity to the state employee charitable campaign was not only contrary to a clearly stated public policy, but arguably in direct violation of state law. *Id.* In the present situation, the right of religious organizations to discriminate on the basis of religious beliefs in choosing its governing members and employees is approved and protected by statute. There is no state policy against such discrimination and therefore no policy to provide a reasonable basis to deny religious charities access to the SECC.

Defendants second argument in favor of exclusion—that the inclusion of religious charities would cause controversy and depress contributions—is no more reasonable. It is true that one purpose of the SECC is to encourage and facilitate charitable giving and that entities that might disrupt the SECC and hinder participation might reasonably be excluded from participation. *Cornelius*, 473 U.S. at 809–11, 105 S.Ct. 3439. However, not only is the suggestion that admission of religious charitable organizations to the SECC would be disruptive unsupported by any evidence, it is contradicted by the actual experience of the SECC and other similar campaigns. Whether by error or intentionally, defendants have admitted to the SECC numerous organizations which discriminate on the basis of religion in select-

ing their boards and employees, including Mission Aviation Fellowship, Mercy Ships, Christian Military Fellowship World Impact and India Partners. They have also admitted many charities whose names would clearly suggest a religious affiliation to participants, including Catholic Charities Diocese of Madison, Catholics United for Life, Christian Children's Fund, Salvation Army World Service Office, Officers Christian Fellowship, Bethany Christian Services Parents, and Jewish Social Services of Madison. Yet there is no empirical evidence of any adverse impact on SECC participation because of their presence.

Participation in the analogous charitable campaign for federal employees does not exclude religiously exclusive entities from participation. 5 CFR § 950.110 (prohibiting discrimination by participants on the basis of religion, but providing that eligibility is not affected "merely because [an organization] is organized by or to serve persons of a particular ... religion.") Yet there is no suggestion that the federal campaign has suffered as a result.

The only example plaintiff provides of SECC disruption involved the participation of the Boy Scouts of America, and participant objections in that instance had no relation to religious affiliation, but concerned discrimination on the basis of sexual orientation. Defendants do not restrict access to the SECC by organizations which discriminate on the basis of sexual orientation. Furthermore, a perusal of the list of organizations identified in former secretary Lightbourn's letter would suggest that many of these organizations are more controversial and likely to elicit participant objections than the religious charities which seek admission here. Accordingly, the single example provided by defendants provides no support for the speculative proposition that participation in the SECC will be adversely affected by the admission of religious charitable organizations.

Having concluded that defendants have presented no reasonable basis for excluding religious charitable organizations from participation in the SECC which could justify the burden imposed on the exercise of their First Amendment rights of associational expression and free speech, the Court need not reach the issue of whether the exclusion was viewpoint neutral. Similarly, the Court does not address plaintiff's additional claims that such conduct violated the Free Exercise, Establishment and Equal Protection Clauses.

## ORDER

IT IS ORDERED that defendants' motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that judgment be entered declaring that excluding a religious charitable organization from participation in the Wisconsin State Employees Combined Campaign solely because that organization discriminates on the basis of religion or creed in choosing its governing board and employees is constitutionally impermissible, and that defendants are enjoined from denying the application of an otherwise qualified religious charitable organization to participate in the Wisconsin State Employees Combined Campaign on that basis.